**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
***Pixley v. Pro-Pak Industries, Inc.,* Slip Opinion No. 2014-Ohio-5460.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-5460

PIXLEY, APPELLEE, *v.* PRO-PAK INDUSTRIES, INC., ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Pixley v. Pro-Pak Industries, Inc.,* Slip Opinion No. 2014-Ohio-5460.]**

*Employer intentional tort—R.C. 2745.01(C)—Proof of employer's deliberate intent to cause injury to an employee is required—Summary judgment is proper when employee failed to prove that employer deliberately removed or disabled safety equipment.*

(No. 2013-0797—Submitted May 14, 2014—Decided December 18, 2014.)

APPEAL from the Court of Appeals for Lucas County,

No. L-12-1177, 2013-Ohio-1358.

_____

**O'DONNELL, J.**

{¶ 1} Pro-Pak Industries, Inc., and Toledo L & L Realty Company appeal from a judgment of the Sixth District Court of Appeals that reversed summary judgment granted by the trial court in their favor in connection with Phillip Pixley's intentional tort claim arising from injuries he sustained when struck by a transfer car in the course and scope of his employment at Pro-Pak.

{¶ 2} Pursuant to R.C. 2745.01, an intentional tort claim requires a demonstration of the employer's intent to cause injury to an employee. And more specifically, R.C. 2745.01(C) provides a rebuttable presumption that the employer acted with the intent to injure another if an injury occurs as a direct result of the deliberate removal of an equipment safety guard.

{¶ 3} In this case, there is no evidence that Pro-Pak deliberately removed or disabled the safety bumper on the transfer car. Pixley therefore cannot avail himself of the statutory presumption, and he has not shown that Pro-Pak deliberately intended to injure him. Thus, no genuine issue of material fact exists on that issue, Pixley has failed to establish an intentional tort claim against his employer, and Pro-Pak is entitled to judgment on that claim as a matter of law. Accordingly, the judgment of the court of appeals is reversed.

### Pro-Pak Industries

{¶ 4} Pro-Pak manufactures corrugated containers, boxes, and packaging materials. Within its facility are conveyor lines that carry materials on rollers throughout the plant and manually operated transfer cars that run on fixed pathways perpendicular to the conveyor lines in order to transfer materials to other areas of the facility.

{¶ 5} The transfer cars can be operated from either end of the vehicle and are equipped with safety bumpers designed to automatically stop the car if compressed by an impact or if a switch fails for other reasons. The bumper has a pair of collapsible linkages, held open by springs, and when the bumper is compressed, the ferrous metal of the linkages is moved away from a proximity sensor, triggering a switch that breaks the circuit and cuts power to the transfer car. Once the safety bumper has collapsed, the car cannot operate until the bumper is reopened, the circuit is completed, and the system has been manually reset.

**Pixley's Injury**

{¶ 6} On July 2, 2008, Pixley, a plant maintenance worker, decided to order a replacement for a malfunctioning conveyor-line motor, and he knelt by the conveyor line with his right knee in the pathway where a transfer car ran while he wrote down the part number.

{¶ 7} At that time, Jonathan Dudzik started a transfer car, but because he operated it from the car's rear control station, the load obstructed his view and he could not see Pixley kneeling in the pathway. As the transfer car moved forward, it pinned Pixley's leg against the conveyor line, causing serious degloving injuries to his right leg from his knee to his ankle, damage to tendons and tissue, and fractures and chips to bones. The accident did not trigger the shut-off mechanism in the safety bumper, and Dudzik manually stopped the transfer car after he realized it had struck Pixley.

{¶ 8} That day, Pro-Pak tested that transfer car and determined that the safety bumper and other safety features functioned properly, and it therefore put the car back in service without repairing or adjusting it.

{¶ 9} The next morning, the Occupational Safety and Health Administration ("OSHA") investigated the incident, photographing and video-recording the operation of the transfer car. In the OSHA investigator's presence, a Pro-Pak employee drove the transfer car, and when Frank Smith, Pro-Pak's plant superintendent, pushed the bumper on the transfer car, the bumper collapsed and the car stopped. Smith repeated this test multiple times at various points along the transfer car's pathway, and each time the safety mechanism functioned properly and stopped the car.

**Case History**

{¶ 10} On June 23, 2010, Pixley brought an employer intentional tort claim against Pro-Pak, alleging that it had not adequately trained its transfer car

operator and had deliberately bypassed the transfer car's safety bumper, causing the shut-off mechanism to fail.

{¶ 11} Pro-Pak and Toledo L & L Realty moved for summary judgment, urging that Pixley could not show that they had deliberately intended to injure him and asserting that he had placed himself in harm's way. Pixley opposed the motion, relying on affidavits and reports from two experts—R. Kevin Smith, P.E., and Gerald C. Rennell—who opined that the proximity sensor for the safety bumper had been deliberately bypassed or disabled. They based their opinions on their review of the video clips, which showed the safety bumper dragging on the surface of the aisle and partially collapsing without stopping the transfer car.

{¶ 12} The trial court granted summary judgment, explaining that Pixley "failed to create a genuine issue of material fact that Pro-Pak had the 'specific intent' to injure him" and "limiting the definition of 'equipment safety equipment' to items designed to protect the 'operator.' "

{¶ 13} Pixley appealed to the Sixth District Court of Appeals, which noted that the deliberate removal by an employer of an equipment safety guard creates a rebuttable presumption that the employer acted with the intent to injure another. Although it recognized that *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, defined "equipment safety guard" to mean " 'a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment,' " the appellate court determined that this definition should not be limited to protecting operators only. 2013-Ohio-1358, 988 N.E.2d 67 (6th Dist.), ¶ 16, quoting *Hewitt* at ¶ 26. Therefore, it "read the Ohio Supreme Court's definition of an 'equipment safety guard' as a 'device designed to shield the [*employee*] from exposure to or injury by a dangerous aspect of the equipment.' " (Brackets and emphasis sic.) *Id*. at ¶ 21. Holding that a genuine issue of material fact existed regarding whether Pro-Pak had deliberately

bypassed the safety bumper, the appellate court reversed and remanded the matter to the trial court. *Id.* at ¶ 24, 27.

{¶ 14} We accepted Pro-Pak's discretionary appeal on two propositions of law:

> (1) The *Hewitt* Court's Definition Of Equipment Safety Guard Is Limited To Protecting Operators Only.
>
> (2) The "Deliberate Removal" Of An Equipment Safety Guard Occurs Only When There Is Evidence The Employer Made A Deliberate Decision To Lift, Push Aside, Take Off Or Otherwise Eliminate The Guard From The Machine.

### Claims before the Court

{¶ 15} The two propositions of law relate to whether the definition of an equipment safety guard is limited to devices designed to shield the operator of the machine from exposure to injury by a dangerous aspect of the equipment and whether the record established a genuine issue of material fact that an intentional tort occurred. We need address only the second issue presented, because it is dispositive of this appeal, and we therefore decline to address the other proposition of law presented to us.

{¶ 16} Pro-Pak urges that the safety bumper is not an equipment safety guard as defined by *Hewitt*, that the rebuttable presumption arises only if the operator of the equipment is injured by its deliberate removal, and that there is no evidence Pro-Pak deliberately removed or disabled the safety bumper on the transfer car.

{¶ 17} Pixley contends that R.C. 2745.01(C) does not expressly differentiate between operators and nonoperators and that *Hewitt* did not require the court to decide whether the rebuttable presumption applied only to operators

of the equipment. He further notes that OSHA regulations and Ohio Bureau of Workers' Compensation rules require equipment safety guards in order to protect all employees—not just operators—from foreseeable injuries and Pro-Pak could be held vicariously liable if its employees deliberately disabled the safety bumper, even without any specific directive from management. And finally, he asserts that the transfer car could not operate with the safety bumper dragging on the floor unless the safety mechanism had been deliberately bypassed, and therefore summary judgment was inappropriate.

## Law and Analysis

{¶ 18} As we explained in *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 29, "R.C. 2745.01 limits claims against employers for intentional torts to circumstances demonstrating a deliberate intent to cause injury to an employee * * *." However, according to R.C. 2745.01(C), the deliberate removal by an employer of an equipment safety guard creates a rebuttable presumption that the removal was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

{¶ 19} And in *Hewitt*, we stated, "the 'deliberate removal' of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard from the machine." *Hewitt*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, at ¶ 30. *Accord Houdek*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, at ¶ 27, quoting *Webster's Third New International Dictionary* 1921 (1986) ("The plain meaning of the word 'remove' is 'to move by lifting, pushing aside, or taking away or off' "). Thus, the failure of an equipment safety guard is not sufficient by itself to raise the rebuttable presumption that the employer intended to injure another; rather, "the 'deliberate removal' referred to in R.C. 2745.01(C) may be described

6

as a careful and thorough decision to get rid of or eliminate an equipment safety guard." *Hewitt* at ¶ 29.

**{¶ 20}** Pixley's experts formed their opinions that the safety bumper had been deliberately bypassed based upon the OSHA video footage, which shows the bumper dragging on the floor and partially collapsing without stopping the transfer car. However, the experts provided no basis for the assertion that the proximity switch should have been triggered in those circumstances, and Brian R. LaFreniere Sr., who worked for the company that installed the transfer car, stated that the safety bumpers could be pushed in at least three or four inches before breaking the circuit and stopping the car. Troy Jefferies, a maintenance manager at Pro-Pak, testified that in his experience the safety bumper still worked even if it dragged on the floor. And Scott Armey, Pro-Pak's human resources manager, stated that on the day of the accident and during the course of the OSHA investigation on the following day, he observed Pro-Pak employees test the safety bumper multiple times and each time they found that the act of compressing the bumper cut power to the transfer car and caused it to stop.

**{¶ 21}** Even if there were a factual dispute concerning the operation of the safety bumper on the day of the accident, there is no evidence showing that Pro-Pak deliberately removed it or otherwise caused it to fail. Pixley does not point to any physical or scientific evidence of tampering, nor has he presented any evidence that anyone at Pro-Pak made a decision to disable or eliminate the safety bumper. A maintenance technician explained that the only way to disable the safety bumper was by using a jumper wire to bypass the proximity switch, and there is no evidence that this ever occurred. To the contrary, Pro-Pak maintenance employees were required to routinely inspect the safety bumper and make repairs if needed.

**{¶ 22}** Because there is no evidence in this record that Pro-Pak deliberately removed or disabled the safety bumper on the transfer car or that it

deliberately intended to cause injury, Pixley has failed to establish an intentional tort claim. Accordingly, the trial court correctly granted summary judgment on that issue in this case. The judgment of the appellate court to the contrary is therefore reversed.

{¶ 23} And because Pixley cannot establish the existence of an intentional tort in this case, we need not reach the issue of whether the definition of an equipment safety guard is limited to devices shielding only operators from exposure to injury by a dangerous aspect of the equipment.

**Conclusion**

{¶ 24} An employer intentional tort claim brought pursuant to R.C. 2745.01 requires proof of the employer's deliberate intent to cause injury to an employee, but there is a rebuttable presumption that the employer acted with the intent to injure another if an injury directly results from the deliberate removal of an equipment safety guard. In this case, however, Pixley failed to prove that Pro-Pak deliberately removed or disabled the safety bumper on the transfer car that injured him. Because of that lack of evidence, the trial court properly entered a summary judgment in favor of Pro-Pak, and the judgment of the appellate court to the contrary is reversed.

{¶ 25} Our determination that Pixley has failed to establish the elements of an intentional tort renders moot the question of whether the definition of an equipment safety guard is limited to a device shielding the operator from injury or whether it encompasses all employees injured by its deliberate removal.

{¶ 26} Based on the foregoing, the judgment of the court of appeals is reversed, and the summary judgment entered by the trial court is reinstated.

Judgment reversed.

KENNEDY and FRENCH, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

8

LANZINGER, J., concurs in judgment only and joins the dissent of PFEIFER, J., only to the extent that it states that R.C. 2745.01(C) applies to both operators and nonoperators.

PFEIFER and O'NEILL, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

**{¶ 27}** As for the question of whether the appellant Pro-Pak Industries, Inc., deliberately removed the guard, I would affirm the judgment of the court of appeals that when viewing the evidence in the light most favorable to the appellee, Phillip Pixley, as is appropriate at the summary-judgment stage, a genuine issue of material fact exists as to whether Pro-Pak deliberately bypassed the safety bumper.

**{¶ 28}** But this court did not accept jurisdiction over this case to answer the question of whether Pixley's claim could factually overcome summary judgment. That issue does not make this matter a "case[] of public or great general interest" meriting this court's jurisdiction pursuant to its authority under Article IV, Section 2(B)(2)(e) of the Ohio Constitution.

**{¶ 29}** What makes this case a Supreme Court case is the issue of whether R.C. 2745.01(C) applies to nonoperators who are injured because of an employer's removal of a safety guard. We should answer that question, and I would affirm the judgment of the appellate court.

**{¶ 30}** The statute at issue in this case, R.C. 2745.01(C), reads:

Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an

injury or an occupational disease or condition occurs as a direct result.

{¶ 31} The plain language of the statute demonstrates that the protections for workers contained in R.C. 2745.01(C) are in no way limited to the operator of a piece of machinery. Under the statute, there is a rebuttable presumption that the removal of a safety guard was committed with an intent to injure if "*an* injury * * * occurs as a direct result." (Emphasis added.) The statute does not differentiate between injuries to machinery operators and nonoperators; there is no limitation regarding to whom the injury must occur, other than the condition set forth in R.C. 2745.01(A) that the statute applies "[i]n an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment." Thus, R.C. 2745.01(C) applies to any employee who suffers an injury because of the employer's deliberate removal of a safety guard.

{¶ 32} I would therefore affirm the entirety of the appellate court's judgment, and I accordingly dissent.

O'NEILL, J., concurs in the foregoing opinion.

_____

**O'NEILL, J., dissenting.**

{¶ 33} This case comes to us for review of the granting of summary judgment. There are enough disputed facts in this case to write a law school journal article. While disposition of cases by summary judgment is essential to conserve the resources of litigants and the judiciary, it cannot be said strongly enough that when facts are in dispute, summary judgment is wholly inappropriate. Civ.R. 56(C) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * * show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The rule further specifies that summary judgment "shall not be rendered unless it appears from the evidence * * * that reasonable minds can only come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Any appellate court's standard of review on summary judgment is de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶ 34} The appellate court correctly determined that summary judgment was inappropriate in this case. There is a genuine issue of material fact regarding whether Pro-Pak Industries, Inc., deliberately bypassed the safety bumper. What is not in dispute here is that the safety bumper did not save the injured worker's leg. It is clear that the machine hit the worker and kept on moving until it was *manually stopped* by the operator. In reversing the trial court's summary-judgment decision in favor of Pro-Pak, the Sixth District Court of Appeals writes, "Based on the expert testimony, reasonable minds could conclude that the bumper compressed enough to shut off power to the transfer car, the power was not shut off, and the only way the bumper could have compressed as far as it did without shutting off the power was if the proximity switch had been deliberately bypassed." 2013-Ohio-1358*, at ¶ 24. Nothing more needs to be said at the summary judgment stage. Everyone in the world is permitted to disagree with that expert—or agree with him. But clearly a room full of reasonable people could come to a whole lot of different opinions based upon that *competent evidence*.

{¶ 35} This case contains conflicting expert testimony and evidence regarding a material fact. Justice demands that such questions of fact must be subjected to the crucible of inquiry. That should happen in a trial, as guaranteed

by the Ohio Constitution, and should not be the work of this court. I am simply not convinced that, when construing the evidence in a light most favorable to Phillip Pixley, reasonable minds could come to but one conclusion. Indeed, the majority asserts that there is no genuine issue of material fact in this case after it identifies and resolves the factual question in favor of Pro-Pak. That exercise is an impermissible invasion of the jury box by this court. Pixley has established a genuine issue of material fact and deserves his day in court. I dissent.

_____

Plevin & Gallucci Co., L.P.A., and David R. Grant; Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellee.

Ritter, Robinson, McCready & James, Ltd., Timothy C. James, and Lorri J. Britsch; Bugbee & Conkle, L.L.P., Gregory B. Denny and Mark S. Barnes, for appellants.

Philip. J. Fulton Law Office, Philip J. Fulton, and Chelsea J. Fulton, urging affirmance for amici curiae Ohio Association of Claimants' Council and Ohio Association for Justice.

Weston Hurd, L.L.P., Daniel A. Richards, Shawn W. Maestle, and Martha L. Allee, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Garvin & Hickey, L.L.C., Preston J. Garvin, and Michael J. Hickey, urging reversal for amicus curiae Ohio Chamber of Commerce.

Bricker & Eckler, L.L.P., and Thomas R. Sant, urging reversal for amicus curiae Ohio Chapter of the National Federation of Independent Business.

Vorys, Sater, Seymour and Pease, L.L.P., and Robert A. Minor, urging reversal for amicus curiae Ohio Self-Insurers Association.

_____