[Cite as *Seaton v. Willoughby*, 2018-Ohio-77.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SHARON W. SEATON , Administrator

     Appellee

     v.

CITY OF WILLOUGHBY, et al.

     Appellant

C.A. No.     28332

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV-2014-01-0168

DECISION AND JOURNAL ENTRY

Dated: January 10, 2018

CARR, Judge.

**{¶1}** Appellant, the City of Willoughby, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** This matter arises out of the tragic death of Shawn Wilson on June 11, 2012. Wilson was dispatched to work on a paving project through the course of his employment with the Willoughby Street Department. The crew began patching potholes at the bottom of a hill on Strawberry Lane, a residential street in Willoughby. On that particular day, Wilson was operating an asphalt roller known as the Maudlin Brothers Model 1450. When the crew reached the top of the hill, the group of vehicles working on the project inadvertently blockaded the driveway of a resident attempting to access the street. Wilson moved the asphalt roller forward to allow the resident to exit his driveway. Unexpectedly, the roller began to roll down an incline at a high rate of speed. Wilson could not stop the roller as it careened out of control. When he

attempted to jump off the machine to safety, he struck his head on the pavement. He subsequently died from his injuries.

{¶3} On January 14, 2014, Sharon W. Seaton, as the Administrator of the Estate of Shawn Wilson, filed a complaint against numerous defendants, including the City of Willoughby ("the City"). The complaint contained claims for survivorship and wrongful death. With leave of court, Seaton filed an amended complaint in April 2015. The City filed an answer generally denying the allegations in the complaint and setting forth numerous defenses, including that the City was immune from liability under R.C. 4123.74. While the Seaton's claims against the City endured, the claims against the other defendants were eventually dismissed from the action.

{¶4} On January 7, 2016, the City filed a motion for summary judgment arguing that it was entitled to workers compensation immunity under R.C. 4123.74 as to the survivorship and wrongful death claims. The City further maintained that the employer intentional tort exception to immunity was not applicable under the facts of this case. Seaton filed a memorandum in opposition to the motion and the City replied thereto. Seaton was permitted to file a sur-reply brief. The trial court ultimately denied the motion for summary judgment, concluding that there was a question of fact as to whether the City deliberately removed a safety guard from the asphalt roller.

{¶5} On appeal, the City raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE LOWER COURT ERRED WHEN IT DENIED THE APPELLANT/CITY OF WILLOUGHBY THE BENEFIT OF IMMUNITY UNDER R.C. CHAPTER 4123.

**{¶6}** In its sole assignment of error, the City contends that the trial court erred when it denied the motion for summary judgment. This Court disagrees.

**{¶7}** This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

**{¶8}** The procedure set forth in Civ.R. 56 "represents a shortcut through the normal litigation process." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶9}** While the moving party bears the initial burden of showing that no genuine issue of material fact exists for trial, once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Rather, the burden then shifts to the non-moving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts which show that there is a genuine issue of material fact for trial. *Id*. at 293. Civ.R. 56(C) designates the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," as proper in demonstrating that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. *Id*. at 292-293. Throughout, the evidence must be construed in favor of the non-moving party. *Temple,* 50 Ohio St.2d at 327. A disputed fact is material if it impacts the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304 (6th Dist.1999).

{¶10} "R.C. 4123.74 provides immunity to employers from damage liability to employees[.]" *Catalano v. Lorain*, 161 Ohio App.3d 841, 2005-Ohio-3298, ¶ 11 (9th Dist.). Pursuant to the immunity conferred by R.C. 4123.74, a workers' compensation claim is an employee's exclusive remedy for most workplace injuries. *Cincinnati Ins. Co. v. DTJ Ents*., 143 Ohio St.3d 197, 2015-Ohio-843, ¶ 7. "But when an employee seeks damages resulting from an act or omission committed by the employer with the intent to injure, the claim arises outside of the employment relationship, and the workers' compensation system does not preempt the employee's cause of action." *Id*. at ¶ 7, citing *Brady v. Safety-Kleen Corp*., 61 Ohio St.3d 624 (1991), paragraph one of the syllabus. The requirements for employer liability are set forth in R.C. 2745.01, which states:

> (A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
>
> (B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.
>
> (C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

**{¶11}** The Supreme Court held that, "as used in R.C. 2745.01(C), 'equipment safety guard' means a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment, and the 'deliberate removal' of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard." *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, ¶ 2.

**{¶12}** "[A]bsent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system." *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, ¶ 25. Significantly, however, the Supreme Court of Ohio recently observed that "R.C. 2745.01(C) permits an employee to prove the employer's intent without direct evidence. When the employee is injured as a direct result of the employer's deliberate removal of an equipment safety guard, R.C. 2745.01(C) creates a rebuttable presumption that the employer intended to injure. It is not a separate tort, it merely provides a legally cognizable example of intent to injure." (Internal quotations omitted.) *Cincinnati Ins. Co.* at ¶ 12, quoting *Irondale Indus. Contractors, Inc. v. Virginia Sur. Co., Inc.*, 754 F.Supp.2d 927, 933 (N.D.Ohio 2010).

**{¶13}** In its July 12, 2016 journal entry denying the motion for summary judgment, the trial court noted Seaton's contention that Willoughby had removed three separate safety guards, namely (1) the emergency parking brake; (2) the manufacturer's manual for the roller; and (3) the necessary cotter pin master link. The court rejected the notion that either a manufacturer's manual or a master link could qualify as a safety guard. With respect to the parking brake, however, the trial court determined that the parking brake did constitute a safety guard because its primary purpose was to ensure safety by preventing movement when the roller was not in

motion. The trial court further concluded that there was, at a minimum, a question of fact regarding whether the City had deliberately disabled the parking brake. In reaching this conclusion, the trial court highlighted admissions by City employees that the parking brake had been modified, as well as additional evidence which tended to show that the modifications effectively disabled the parking brake.

{¶14} On appeal, the City maintains that it is immune from liability under R.C. 4123.74. While the City does not challenge the trial court's conclusion that the parking brake qualifies as a safety guard, the City contends that the trial court erred in denying the motion for summary judgment because there is no evidence that the City deliberately removed or disabled the parking brake on the asphalt roller. It follows, argues the City, that the employer intentional tort exception to immunity as articulated in R.C. 2745.01(C) is inapplicable in this case because there is no evidentiary basis to conclude that the City made a deliberate decision to remove a safety guard.

{¶15} The parties put forth extensive evidence in support of their summary judgment filings. The deposition testimony of George Trost was critical to the trial court's determination that there was a question of fact on the issue of whether the City disabled the parking break. Trost works as a supervisor for the City where he manages and schedules maintenance and repairs to city vehicles. Before ascending to supervisor, Trost worked as a mechanic for the City for 28 years. After the accident that resulted in Wilson's death, Trost, along with several inspectors from the Ohio Bureau of Worker's Compensation, reviewed the roller at the police department. The City had a practice of inspecting the Maudlin once every 100 hours that it was in use. A reading of the meter on the roller suggested that the roller had been in use for approximately 17 hours since its last inspection. The group tested the parking brake at the police

station and discovered that the brake was not tight enough and, thus, not operational. Trost indicated that he had no reason to believe the condition of the parking break at the police station was different than the condition of the parking break at the time of the accident. Trost also did not dispute the finding in the BWC's report that the parking brake was in the "on" position when they inspected it at the police station.

{¶16} Trost became aware that the parking break needed to be repaired in 2010, prior to the accident. Trost testified that work was done on the brake "shortly thereafter[.]" When asked if he knew whether the modification in anyway effected the roller's braking system, Trost responded, "No, I do not." When pressed on whether he noticed "any difference in the braking before as opposed to after the modification[,]" Trost simply stated, "Nope." When asked if he disagreed with the BWC investigators who observed that the rust on the rotor was evidence that the brake had not been working for some time, Trost responded, "I'm not sure." While other City employees indicated that they had no issues with the parking brake during the time leading up to the accident, Trost acknowledged that he "couldn't say for sure" the last time the parking brake was operational prior to Wilson's accident.

{¶17} Though Trost denied having personal knowledge of additional modifications to the parking brake, he admitted during his deposition testimony that, over the years, several other aspects of the parking braking system had been altered, such as adding an extender to the brake lever, lowering the brake mounting bracket, and cutting away part of the sheet metal that surrounds the calipers. While there were service orders for certain repairs, Trost acknowledged that the record keeping in the garage was "absolutely horrible" prior to Wilson's accident. Trost ultimately conceded that "the brakes and the calipers were substantially modified by the [C]ity from the time that they were received from the manufacturer[.]" Woodrow Wilhelm, who served

as a vehicle maintenance supervisor in the City prior to his retirement, testified that the braking system is one of the most important safety devices on the roller. Wilhelm indicated that he would never modify the braking system on the roller without consulting the manufacturer due to the safety concerns. Both Seaton and the City retained experts who rendered competing opinions on the condition of the parking brake, with Seaton's expert stating that the alteration of the brake caliper level effectively disabled the parking brake.

{¶18} Viewing the evidence in favor of the nonmoving party, this Court cannot say that the trial court erred in denying the City's motion for summary judgment. While the City points to the Supreme Court's decisions in *Pixley v. Pro-Pack Industries, Inc.*, 142 Ohio St.3d 203, 2014-Ohio-5460 and *Hewitt*, 2012-Ohio-5317, in support of the proposition that there must be "a careful and thorough decision to get rid of or eliminate an equipment safety guard[,]" the evidentiary posture in those cases was completely different than the case at bar. *Pixley* at ¶ 19, quoting *Hewitt* at ¶ 29. In *Pixley*, the high court concluded that R.C. 2745.01(C) was inapplicable because there was no evidence that the defendant tampered with the safety guard or did anything that "otherwise caused the [safety guard] to fail." *Pixley* at ¶ 21. Likewise, in *Hewitt*, the Supreme Court concluded that the failure to instruct employees to wear protective items and take precautionary measures did not equate to the deliberate removal of a safety guard. *Hewitt* at ¶ 30. Here, Trost acknowledged that the parking brake was substantially modified by the City. Wilhelm indicated that altering the design of the parking brake without consulting the manufacturer was "dangerous" because those modifications would substantially alter "the safety aspect" of the roller's design. While there was contrasting evidence, including competing statements from experts, regarding the functionality of the parking brake prior to the accident, Seaton presented evidence that the City's modifications disabled the parking brake. Even though

the City presented evidence that the roller was used without incident prior to the accident, we are mindful that "[s]imply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether the procedure or device is dangerous or unsafe." *Taulbee v. Adience, Inc., BMI Div.*, 120 Ohio App.3d 11, 20 (10th Dist.1997), quoting *Cook v. Cleveland Elec. Illum. Co.*, 102 Ohio App.3d 417, 429-430 (8th Dist.1995). Thus, under these circumstances, where there remains a question of material fact regarding whether the City deliberately removed a safety guard by disabling the parking brake, we cannot say that the trial court erred in denying the City's motion for summary judgment.

{¶19} The City's assignment of error is overruled.

### III.

{¶20} Willoughby's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JAMES A. CLIMER, JOHN T. MCLANDRICH, FRANK H. SCIALDONE, and JOHN D. PINZONE, Attorneys at Law, for Appellant.

CHRISTIAN PATNO and COLIN R. RAY, Attorneys at Law, for Appellee.