*200 Lundberg Stratton, J.
{¶ 1} We are asked to decide whether “equipment safety guard” for purposes of R.C. 2745.01(C) includes only those devices on a machine that shield an employee from injury by guarding the point of operation of that machine and whether the “deliberate removal” of such an “equipment safety guard” occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard from the machine.
{¶2} For the reasons that follow, we hold that as used in R.C. 2745.01(C), “equipment safety guard” means a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment, and the “deliberate removal” of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard.
{¶ 3} Protective rubber gloves and sleeves are personal items that an employee controls and do not constitute “an equipment safety guard” for purposes of R.C. 2745.01(C). An employee’s failure to use them, or an employer’s failure to require an employee to use them, does not constitute the deliberate removal by an employer of an equipment safety guard. Consequently, the plaintiff failed to establish a rebuttable presumption of intent pursuant to R.C. 2745.01(C), and the defendant was entitled to judgment as a matter of law. We reverse the judgment of the court of appeals and enter judgment in favor of appellant.
Facts and Procedural History
{¶ 4} Appellee, Larry Hewitt, was working as an apprentice lineman for appellant, the L.E. Myers Company, an electrical-utility construction contractor. Hewitt was a second-step apprentice, meaning that he had completed the first two steps in a seven-step program, and he was now working in the field.
{¶ 5} On June 14, 2006, Hewitt was assigned to an L.E. Myers crew that was replacing old electrical power lines along Route 60 near New London, Ohio. The crew met that morning for a short daily job briefing. Workers who attended the briefing signed a daily job-briefing log. Hewitt claimed that he was late and missed the meeting that morning; nevertheless, his signature appeared on the log.
{¶ 6} Hewitt’s job that day was to tie in the new power line, which was deenergized. Because the crew was short one person, Hewitt had to work by himself in an elevated bucket even though he was only an apprentice. According to the daily job-briefing log, workers were required to use protective rubber gloves and sleeves that day, which was consistent with L.E. Myers’s policy, in case the lines became energized. Hewitt admitted that gloves were available, but he claimed that Dennis Law, a lineman on the job, told him that he should not *201 need the protective rubber gloves and sleeves because the line was de-energized. Law disputed the conversation. Hewitt did not wear them.
{¶ 7} Law was directing traffic and supervising Hewitt’s work from the ground that day. At some point, Law yelled to Hewitt from the ground. When Hewitt turned in Law’s direction, the we in his right hand came in contact with an energized line and he received an electric shock, which caused severe burns.
{¶ 8} Hewitt applied for and received workers’ compensation benefits. He also filed a claim alleging a violation of a specific safety requirement, and the parties settled that case.
{¶ 9} Hewitt filed this action against L.E. Myers alleging a workplace intentional tort in violation of R.C. 2745.01 and common law. He alleged that L.E. Myers knew with substantial certainty that he would be injured when working alone in an elevated lift bucket near energized high-voltage power lines without the use of protective rubber gloves and sleeves. Hewitt alleged that L.E. Myers in effect removed the protective rubber gloves and sleeves that were safety guards creating a barrier between him and the electrical current.[1]
{¶ 10} The case proceeded to a jury trial. At the conclusion of the plaintiffs case, L.E. Myers moved for a directed verdict as to liability under R.C. 2745.01. The trial court concluded that there was insufficient evidence to demonstrate a direct intent to harm as required by R.C. 2745.01(A) and (B). So the court limited the plaintiffs theory of recovery to R.C. 2745.01(C), according to which the employer’s deliberate removal of an equipment safety guard creates a rebuttable presumption of an intent to injure.
{¶ 11} The jury returned a verdict in favor of Hewitt. The court overruled L.E. Myers’s motion for judgment notwithstanding the verdict.
{¶ 12} L.E. Myers appealed the court’s denial of a directed verdict and judgment notwithstanding the verdict. The court of appeals affirmed. The court reasoned that the protective rubber gloves and sleeves were equipment safety guards within the meaning of R.C. 2745.01(C) and that the decision by Hewitt’s supervisor to place Hewitt alone in an elevated bucket close to energized wires without requiring him to wear protective rubber gloves or sleeves amounted to the deliberate removal of an equipment safety guard. Thus, the appellate court concluded, this established a rebuttable presumption under R.C. 2745.01(C) of an intent to injure Hewitt, and L.E. Myers had presented no evidence to rebut the presumption.
*202 {¶ 13} The cause is before this court upon the acceptance of a discretionary appeal. 131 Ohio St.3d 1456, 2012-Ohio-648, 961 N.E.2d 1135.
Analysis
{¶ 14} A cause of action for an employer intentional tort is governed by R.C. 2745.01, which provides:
(A) In an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
(B) As used in this section, “substantially certain” means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.
(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.
{¶ 15} Today, we review the phrase “deliberate removal by an employer of an equipment safety guard” in R.C. 2745.01(C).[2] L.E. Myers argues that “an equipment safety guard” means a safety device attached to a machine that is intended to guard an employee from injury and that “deliberate removal” occurs when an employer makes a deliberate decision to eliminate that guard from the machine.
{¶ 16} When construing a statute, our primary goal is to ascertain and give effect to the intent of the General Assembly. State v. Hairston, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11. We begin with the plain language and apply it as written in the statute. State v. Chappell, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 17. In doing so, we read words and phrases in context and according to the rules of grammar and common usage, and they must be given a technical or particular meaning if appropriate. R.C. 1.42.
*203 A. Definition of “An Equipment Safety Guard”
{¶ 17} R.C. 2745.01(C) does not define these terms, so we look to the plain and ordinary meaning of the words. Van Fossen v. Babcock & Wilcox Co., 36 Ohio St.3d 100, 103, 522 N.E.2d 489 (1988). The court of appeals used the following definitions:
“ ‘Guard’ is defined as ‘a protective or safety device; specif: a device for protecting a machine part or the operator of a machine.’ Merriam-Webster’s Collegiate Dictionary [516 (10th Ed.1996)]. ‘Safety’ means ‘the condition of being safe from undergoing or causing hurt, injury, or loss.’ [Id. at 1027.] And ‘equipment’ is defined as ‘the implements used in an operation or activity: APPARATUS.’ [Id. at 392.]”
2011-Ohio-5413, 2011 WL 5009758, ¶ 24, quoting Fickle v. Conversion Technologies Intematl., Inc., 6th Dist. No. WM-10-016, 2011-Ohio-2960, 2011 WL 2436750, ¶ 38.
{¶ 18} The word “guard,” a noun, is modified by the adjectives “equipment” and “safety.” Reading the words in context and according to the rules of grammar as we must, R.C. 1.42, we determine that the phrase “an equipment safety guard” means a protective device on an implement or apparatus to make it safe and to prevent injury or loss.
{¶ 19} The Sixth District Court of Appeals so interpreted the phrase in Fickle, 2011-Ohio-2960, 2011 WL 2436750, modified, Beyer v. Rieter Automotive N. Am., Inc., 6th Dist. No. L-11-1110, 2012-Ohio-2807, 973 N.E.2d 318. In that case, the plaintiffs hand and arm were caught in a roller on an adhesive-coating machine. She alleged that her employer had failed to train her to use a jog switch that would stop the roller when not depressed and also had disconnected an emergency stop cable. The Fickle court concluded that these devices were not “equipment safety guards,” because they did not prevent the plaintiffs hands from being exposed to the dangerous point of operation of the machinery she had been operating. Id. at ¶ 42. Thus, the court concluded that these facts did not demonstrate a “[deliberate removal by an employer of an equipment safety guard” to establish a presumption of intent under R.C. 2745.01(C).
{¶ 20} Fickle rejected the argument that “equipment safety guard” included “ ‘any device designed to prevent injury or to reduce the seriousness of injury.’ ” Id. at ¶ 39. “The General Assembly did not make the presumption applicable upon the deliberate removal of any safety-related device, but only of an equipment safety guard, and we may not add words to an unambiguous statute under the guise of interpretation.” Id. at ¶ 42. Thus, Fickle defined “equipment safety *204 guard” as a “device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment.” Id. at ¶ 43.
{¶ 21} Other appellate districts in this state have similarly construed this phrase. See Beary v. Larry Murphy Dump Truck Serv., Inc., 5th Dist. No. 2011-CA-00048, 2011-Ohio-4977, 2011 WL 4496655, ¶ 21 (“equipment safety guard” commonly means a device designed to shield the operator of equipment from exposure to injury by a dangerous aspect of the equipment; a vehicle’s backup alarm does not guard anything); Barton v. G.E. Baker Constr., 9th Dist. No. 10CA009929, 2011-Ohio-5704, 2011 WL 5345400 (a trench box to secure the sides of a trench from collapse is not “an equipment safety guard” because it is not a piece of equipment designed to protect an operator of equipment); Roberts v. RMB Eras., Inc., 197 Ohio App.3d 435, 2011-Ohio-6223, 967 N.E.2d 1263, ¶ 24 (12th Dist.) (a tire bead and bead taper, alleged safety features of a wheel-assembly unit, do not constitute “equipment safety guards,” because they are not devices designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment).
{¶ 22} The court below did not agree that the “safety guard” must be attached to machinery. The court reasoned that that interpretation would limit recovery for injured employees who did not work with equipment. 2011-Ohio-5413, 2011 WL 5009758, ¶ 20. Likewise, Hewitt advocates that the phrase should apply broadly to any safety-related item that may serve as a barrier between the employee and danger, citing Beyer, 2012-Ohio-2807, 973 N.E.2d 318, in support.
{¶ 23} In Beyer, the Sixth District Court of Appeals agreed with the Eighth District’s expanded interpretation in Hewitt and concluded that even “personal protection equipment” such as a face mask at a manufacturing plant was “an equipment safety guard” because the masks were used to prevent the employee’s exposure to toxic dust. Beyer modified Fickle and held that “equipment safety guard” as used in R.C. 2745.01(C) may also include free-standing equipment. Id. at ¶ 12-13.
{¶ 24} We do not agree. To construe “equipment safety guard” to include any generic safety-related item ignores not only the meaning of the words used but also the General Assembly’s intent to restrict liability for intentional torts. As the Ninth District observed in Barton v. G.E. Baker Constr., 2011-Ohio-5704, 2011 WL 5345400, ¶ 11, “[f]rom these common dictionary definitions, it becomes apparent that not all workplace safety devices are ‘equipment safety guards’ as that term is used in Section 2745.01.”
{¶ 25} A broad interpretation of the phrase does not comport with the General Assembly’s efforts to restrict liability for intentional tort by authorizing recovery “only when an employer acts with specific intent.” Stetter v. R.J. Gorman Derailment Servs., L.L.C., 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, *205 ¶ 26; Kaminski v. Metal & Wire Prods. Co., 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 56. As we explained in Kaminski, the statutory restriction of intentional-tort liability “is supported by the history of employer intentional-tort litigation in Ohio and by a comparison of the current statute to previous statutory attempts.” Id. at ¶ 57. It is not our role to second-guess the policy matters set by the General Assembly. Stetter at ¶ 35. Consequently, we refrain from expanding the scope of the rebuttable presumption of intent in R.C. 2745.01(C).
{¶ 26} Free-standing items that serve as physical barriers between the employee and potential exposure to injury, such as rubber gloves and sleeves, are not “an equipment safety guard” for purposes of R.C. 2745.01(C). Instead, rubber gloves and sleeves are personal protective items that the employee controls. We adopt the definition in Fickle and hold that as used in R.C. 2745.01(C), “equipment safety guard” means “a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment.” Fickle, 2011-Ohio-2960, 2011 WL 2436750, ¶ 43.
B. Definition of “Deliberate Removal”
{¶ 27} The court of appeals concluded that the employer’s decision to place Hewitt close to energized wires without requiring him to wear protective rubber gloves or sleeves amounted to the deliberate removal of an equipment safety guard. We disagree.
{¶ 28} The court below defined the words as follows: “deliberate” means “ ‘characterized by or resulting from careful and thorough consideration — a deliberate decision,’ ” and “remove” means “ ‘to move by lifting, pushing aside, or taking away or off; also ‘to get rid of: ELIMINATE.’ ” 2011-Ohio-5413, 2011 WL 5009758 at ¶ 24, quoting Fickle at ¶ 30-31.
{¶ 29} Thus, the “deliberate removal” referred to in R.C. 2745.01(C) may be described as a careful and thorough decision to get rid of or eliminate an equipment safety guard. Hewitt argues that “removal” is a broad term that encompasses more than just a physical removal. Although “removal” may encompass more than physically removing a guard from equipment and making it unavailable, such as bypassing or disabling the guard, an employer’s failure to train or instruct an employee on a safety procedure does not constitute the deliberate removal of an equipment safety guard. Fickle at ¶ 45. See also Wineberry v. N. Star Painting Co., 7th Dist. No. 11MA103, 2012-Ohio-4212, 978 N.E.2d 221 (employer’s failure to place guardrails around a perch and scaffolding was not a deliberate removal when the guardrails were never in place).
{¶ 30} Consequently, we hold that the “deliberate removal” of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard from the machine. Here, the *206 employer’s failure to instruct Hewitt to wear protective items such as rubber gloves and sleeves and requiring Hewitt to work alone in an elevated bucket do not amount to the deliberate removal of an equipment safety guard within the meaning of R.C. 2745.01(C) so as to create a rebuttable presumption of intent.
{¶ 31} Finally, Hewitt argues that the meaning of the terms in R.C. 2745.01(C) is a question for the trier of fact to determine. According to Hewitt, jurors could reasonably conclude that the protective rubber gloves and sleeves qualified under R.C. 2745.01(C) as “equipment safety guard[s]” that were “effectively eliminated” when Hewitt was told he did not have to wear them. Because the interpretation of undefined terms within a statute is a question of law for the court, we reject this argument. Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054.
Conclusion
{¶ 32} The protective rubber gloves and sleeves in this case do not, as a matter of law, constitute an equipment safety guard within the meaning of R.C. 2745.01(C). Consequently, we reverse the judgment of the court of appeals and order judgment in favor of appellant.
Judgment reversed.
O’Donnell, Lanzinger, and Cupp, JJ., concur.
O’Connor, C.J., and McGee Brown, J., concur in judgment only.
Pfeifer, J., dissents.

. Hewitt also named as defendants the Bureau of Workers’ Compensation to the extent of its subrogation rights and the Ohio attorney general because the complaint asserted a challenge to the constitutionality of R.C. 2721.12. They are not parties in this appeal.

. The trial court ruled that Hewitt had presented insufficient evidence of a direct intent to injure necessary to recover under R.C. 2745.01(A) and (B), and the court limited the plaintiffs theory to the presumption of intent in R.C. 2745.01(C). The issue of direct intent is not before us.