[Cite as *Henzerling v. Environmental Ents., Inc.*, 2017-Ohio-2666.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JAMES T. HENZERLING, Individually and as Co-administrator of the Estate of ZACHARY AARON JAMES HENZERLING, deceased, | : | APPEAL NO. C-160232 TRIAL NO. A-1307935 |
| | : | |
| and | : | *O P I N I O N.* |
| NORBERT N. ENGLE, Co-administrator of the Estate of ZACHARY AARON JAMES HENZERLING, deceased, | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| ENVIRONMENTAL ENTERPRISES, INC., | : | |
| Defendant-Appellee, | : | |
| and | : | |
| AVOX SYSTEMS, INC., | : | |
| SAFTEY-KLEEN SYSTEMS, INC., | : | |
| and | : | |
| TONWANDA TANK TRANSPORT SERVICE, INC., | : | |
| Defendants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 5, 2017

*D. Authur Rabourn, LLC,* and *D. Arthur Rabourn,* and *Office of Terrence L. Goodman, LLC,* and *Terrence L. Goodman,* for Plaintiffs-Appellants,

*Weston Hurd, LLP, Carolyn M. Cappel* and *Martha Allee,* for Defendant-Appellee.

Per Curiam.

{¶1}   Plaintiffs-appellants James T. Henzerling and Norbert N. Engle, co-executors of the estate of Zachary Henzerling, ("appellants") appeal from the summary judgment granted in favor of defendant-appellee Environmental Enterprises, Inc., ("EEI") on their claims for wrongful death and personal injuries allegedly caused by the appellee's intentional tort. Appellants contend that (1) the trial court erred when it failed to apply the rebuttable presumption in R.C. 2745.01(C), and (2) the trial court erred when it held that there was not a genuine issue of material fact concerning whether EEI deliberately intended to cause injury to Zachary Henzerling.  We affirm.

## Facts

{¶2}   EEI is a company that specializes in industrial and hazardous waste disposal.  Avox Systems, Inc., ("Avox") shipped industrial air filters contaminated with sodium chlorate to EEI for decontamination.  Zachary Henzerling, an EEI employee, was assigned to work on the decontamination of the Avox air filters.  A regulatory deadline for the disposal of the air filters was rapidly approaching, and the air filters had to be disposed of quickly.

{¶3}   EEI employee Timothy Fisher was also assigned to the task.  A metal mesh cage encased each filter.  The men were directed to remove the metal cage before putting the disassembled pieces into a nearby water tote to rinse them.  Fisher asked supervisor Kyle Duffens if he and Henzerling could use a reciprocating saw, referred to as a "sawzall," to remove the metal casings.  Duffens told Fisher that they could. Duffens had apparently used a sawzall in the past to disassemble air filters.   The men proceeded with their work.  Henzerling steadied an air filter on a large drum for Fisher to cut.  As Fisher was cutting through the metal casing with the sawzall, he saw smoke coming off of the blade and the filter.  He immediately stopped sawing, and noticed a

2

small flash of neon orange on the filter material. The entire filter quickly caught fire. Within moments, boxes of nearby air filters also caught fire. Henzerling was severely burned. He died that day. Appellants later sued EEI under R.C. 2745.01 for intentionally causing Henzerling's death.

{¶4} EEI does not dispute that the heat coming off of the sawzall combined with the sodium chlorate and the organic material that the air filter was made of created an extremely hazardous condition that led to the fire. But EEI maintains that it was unaware that the air filters contained organic, and thereby flammable, material until after the fire had occurred.

{¶5} Jeffrey Tucker, an approval chemist at EEI, was deposed in connection with the lawsuit. Tucker had reviewed the paperwork that had been sent prior to the air-filter shipment to determine whether EEI would accept the air filters for decontamination. The paperwork, referred to as a "profile," indicated that Avox wanted to ship "personal protective equipment" ("PPE") to EEI that had been contaminated with sodium chlorate. PPE is a somewhat generic term that can encompass a wide range of materials. The profile at issue indicated that the PPE that Avox wanted to ship to EEI for treatment had low "British Thermal Units," or "BTUs." According to Tucker, a low BTU indicated that the material had "very minimum energy," meaning that it was unlikely that any type of a reaction would occur when processing the filters. The profile also indicated that there was a low risk of burning associated with the PPE, that the materials were not explosive, and that the total "organic" content of the PPE was less than 1 percent. Based on the profile, Tucker determined that the shipment did not contain reactive materials. The shipment was approved for delivery to EEI.

3

{¶6} Daniel McCabe, president of EEI, was also deposed. According to McCabe, EEI would not have accepted shipment of the air filters had it known that the air filters contained organic material. McCabe appreciated the dangers surrounding disposal of this type of item. McCabe testified that the EEI facility was not the proper place to treat such waste because of its volatile property.

{¶7} Sara Pratt, who had been a quality assurance technician at EEI at the time of the fire, testified in her deposition that EEI tests samples of waste material in its on-site laboratory before the waste is processed for disposal. Pratt was not personally responsible for sending a test sample of the air filters in this case to the lab for testing.

{¶8} Appellants' expert Peter Paul Howell, a hazardous materials safety expert, opined by way of affidavit that EEI should have discovered that the air filters were made of an organic material by sending the filters to the EEI lab for testing, and that "from the record" EEI would have known that the filters were made of an organic material. Howell came to this conclusion by pointing to the profile reviewed by Tucker, and opining that these were the "types" of PPE that would be expected to be reactive with sodium chlorate. Howell stated that EEI should have used available submersion tanks to safely decontaminate the filters before cutting away the metal casings. According to Howell, a submersion tank is considered an equipment safety guard in the waste-processing industry.

{¶9} EEI moved the trial court for summary judgment. Following briefing and arguments by counsel, the trial court granted EEI's motion, holding that EEI was entitled to judgment on appellants' R.C. 2745.01 intentional-tort claim. In their sole assignment of error, appellants claim that the trial court erred in entering summary judgment in favor of EEI.

**The Law and Analysis**

{¶10} We review the granting of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Grafton*; *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

{¶11} R.C. 2745.01 governs an employer's liability for intentional torts. It provides a narrow exception to the general prohibition against employee lawsuits for workplace injuries under Ohio's workers' compensation system. *Pastromous v. UCL, Inc.*, 1st Dist. Hamilton No. C-150352, 2016-Ohio-4674, ¶ 26. A claim under R.C. 2745.01 requires proof of the employer's deliberate intent to cause injury to an employee. *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 24-25; *Pastromous* at ¶ 32. Under R.C. 2745.01(C), there is a rebuttable presumption that the employer acted with the deliberate intent to injure an employee if an injury directly resulted from the deliberate removal of an equipment safety guard.

{¶12} Appellants contend (1) that the trial court erred when it failed to apply the rebuttable presumption in R.C. 2745.01(C); and (2) that the trial court erred when it held that no genuine issue of material fact existed concerning whether EEI had deliberately intended to harm Henzerling.

## I. R.C. 2745.01(C) and "Equipment Safety Guard"

{¶13} Appellants assert that EEI's failure to require Henzerling to use a submersion tank before cutting away the air filters' metal casings was tantamount to

5

the deliberate removal of an equipment safety guard, and that the trial court should have applied the presumption in R.C. 2745.01(C) to deny EEI summary judgment. This argument has no merit.

{¶14} An equipment safety guard under R.C. 2745.01(C) is "a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment * * * ." *Hewitt v. L.E. Myers Co.,* 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, ¶ 2. In *Hewitt,* the Ohio Supreme Court explicitly rejected a broader interpretation reasoning that "to include any generic safety-related items ignores not only the meaning of the words used but also the General Assembly's intent to restrict liability for intentional torts." *Id.* at ¶ 24. Thus, "[f]ree standing items that serve as physical barriers between the employee and potential exposure to injury * * * are not 'an equipment safety guard' for purposes of R.C. 2475.01(C)." *Id.* at ¶ 26.

{¶15} Viewing the evidence presented in a light most favorable to appellants, there is nothing in the record showing that the submersion tank was "an equipment safety guard." The tank was not "designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *See Hewitt* at ¶ 2; *Barton v. G.E. Baker Constr., Inc.,* 9th Dist. Loraine No. 10CA009929, 2011-Ohio-5704, ¶ 11 (holding that a "trench box" designed to protect workers from a trench collapse did not constitute an "equipment safety guard" because "[a] trench is not a piece of equipment and the trench box is not designed to protect the operator from any piece of equipment"). The submersion tank was a free standing item that, had it been used prior to cutting away the metal casing, may have created a safer work environment. But it was not designed to protect a worker from any aspect of any equipment. Further, Henzerling was not even using the submersion tank, and—even if he had been—no there was no evidence that any safety device on the tank had been removed.

{**¶16**}  While appellants' expert opined that a submersion tank was considered an "equipment safety guard" in the waste-processing industry, this statement failed to create a genuine issue of material fact concerning the rebuttable presumption in R.C. 2745.01(C).  The definition of an "equipment safety guard" is governed by *Hewitt*, and not by industry standards. *See Fickle v. Conversion Technologies Internat.,* 6th Dist. Williams No. WM–10–016, 2011-Ohio-2960, ¶ 34 ("There is nothing in the statute or the case law that suggests the General Assembly intended to incorporate any of the various equipment-specific or industry-specific definitions of guard appearing throughout the administrative or OSHA regulations, or for any agency or regulatory measure to be considered a definitional source [of 'equipment safety guard'].").

{**¶17**}  This argument therefore has no merit.

## II. Deliberate Intent

{**¶18**}  Appellants next argue that "the totality of the circumstances establish that a question of fact exists whether EEI intended to cause injury."  They argue that EEI knew that organic material contaminated with sodium chlorate, combined with the heat generated by a sawzall, would inevitably lead to a fire and explosion.  They also contend that EEI was under pressure to quickly dispose of the filters because of regulatory requirements, and therefore, it had the deliberate intent to harm Henzerling in order to comply with the regulations.

{**¶19**}  It is true that EEI acknowledged the dangers associated with organic materials contaminated with sodium chlorate.  The flaw in appellants' argument is that there is no evidence that EEI knew that the air-filter material at issue in this case was made of an organic substance. The profile reviewed by Tucker before EEI would accept shipment of the air filters stated that the "PPE" in the shipment contained less than 1 percent organic material, and that it was unlikely to burn or to explode.  McCabe

stated that EEI would never have accepted shipment of the air filters had the profile correctly identified the air-filter material. There is nothing in the record—save the unsupported conclusions of Howell—that even suggests that EEI deliberately intended to harm Henzerling by having him work with a sawzall. While Pratt indicated that samples of waste were taken and tested before processing, Pratt was not involved in this particular matter, and there is no evidence that anyone at EEI had tested the organic versus inorganic nature of the filters prior to processing.

### Conclusion

{¶20} Thus, there is no genuine issue of fact concerning whether EEI acted with deliberate intent to cause injury or death to Henzerling. The appellants' sole assignment of error is overruled. The trial court's judgment is affirmed.

Judgment affirmed.

**ZAYAS, P.J., MYERS** and **GORMAN JJ.**

ROBERT H. GORMAN, retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its own entry this date.