[Cite as *McAllister v. Myers Industries*, 2019-Ohio-773.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

BRIAN J. MCALLISTER

    Appellant

    v.

MYERS INDUSTRIES, INC., et al.

    Appellees

C.A. No.     29040

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2017-10-4164

DECISION AND JOURNAL ENTRY

Dated: March 6, 2019

CARR, Judge.

{¶1} Plaintiff-Appellant Brian J. McAllister appeals from judgments of the Summit County Court of Common Pleas. This Court reverses and remands the matter for proceedings consistent with this opinion.

I.

{¶2} On April 3, 2014, Mr. McAllister, while working as an employee of Defendant-Appellee Myers Industries, Inc., was injured when an injection molding machine crushed his left hand causing serious injuries to that hand.

{¶3} Mr. McAllister initially filed suit in 2016, but subsequently voluntarily dismissed the suit on October 4, 2016. On October 4, 2017, he filed the instant suit against Myers Industries, Inc. and Defendants-Appellees Filter Specialties Co. and Bill Hartwick. Approximately two months before Mr. McAllister was injured, Mr. Hartwick of Filter

Specialties Co. performed work on the injection molding machine at issue at the request of Myers Industries, Inc.

{¶4} Mr. McAllister asserted an employer intentional tort claim against Myers Industries, Inc., a negligence claim against Filter Specialties Co. and Mr. Hartwick, and a claim for punitive damages. In addition, Mr. McAllister filed a declaratory judgment claim concerning Myers Industries, Inc.'s possible subrogation rights if Mr. McAllister was successful on his other claims. The Ohio Bureau of Workers' Compensation moved to intervene. After its motion was granted, it filed a complaint seeking recovery of funds it expended.

{¶5} Myers Industries, Inc. filed a motion to dismiss[1] Mr. McAllister's employer intentional tort claim and the claim for punitive damages. With respect to the employer intentional tort claim, Myers Industries, Inc. argued that it was barred by the statute of limitations and it failed to state a claim for relief against Myers Industries, Inc. Ultimately, the trial court granted the motion to dismiss concluding that the allegations did not meet the heightened pleading standard required by law. Specifically, the trial court concluded that Mr. McAllister failed to provide "specific facts showing that Myers [Industries, Inc.] intended to injure [Mr. McAllister], Myers [Industries, Inc.] believed it was substantially certain that [Mr. McAllister] would be injured or that Myers [Industries, Inc.] deliberately removed a safety guard."

{¶6} Mr. Hartwick and Filter Specialties, Co also filed a motion to dismiss or in the alternative, a motion for summary judgment based upon the statute of limitations. The trial court granted the motion for summary judgment. The trial court then concluded that the claim for declaratory relief was moot and dismissed it as well.

---

[1] The motion was framed as a motion to dismiss or in the alternative, for partial summary judgment.

**{¶7}** Mr. McAllister has appealed, raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN GRANTING THE MOTION TO DISMISS
FILED BY APPELLEE MYERS INDUSTRIES.

**{¶8}** Mr. McAllister argues in his first assignment or error that the trial court erred in granting the motion to dismiss his employer intentional tort claim.

**{¶9}** "This Court reviews an order granting a Civ.R. 12(B)(6) motion to dismiss de novo." *Grubb & Assocs. LPA v. Brown*, 9th Dist. Lorain No. 17CA011201, 2018-Ohio-3526, ¶ 7. "A Civ.R. 12(B)(6) motion tests the sufficiency of the complaint, and dismissal is appropriate where the complaint fail[s] to state a claim upon which relief can be granted." (Internal quotations and citations omitted.) *Id.* "In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. Before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling [him] to recovery." (Internal quotations and citations omitted.) *Id.* at ¶ 8.

**{¶10}** With respect to employer intentional tort claims, the Supreme Court has "carve[d] out a heightened standard of review for Civ.R. 12(B)(6) motions * * *." *Byrd v. Faber*, 57 Ohio St.3d 56, 60 (1991), citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190 (1988). The rationale for doing so was "the need to deter the number of baseless claims against employers, the importance of preventing every workplace injury from being converted into an intentional tort claim, and the goal of facilitating the efficient administration of justice * * *." *Byrd* at 60. Thus, "in order to survive a Civ.R. 12(B)(6) motion to dismiss, a plaintiff bringing an intentional tort claim against an employer must allege certain facts with particularity." *Id.* at 60-61.

"Unsupported conclusions that [the defendant] committed an intentional tort are not taken as admitted by a motion to dismiss and are not sufficient to withstand such a motion." *Mitchell* at 193.

{¶11} In *Mitchell*, the Supreme Court held that, the complaint must allege "facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and despite this knowledge, still proceeded." *Id.* "There have been various changes in the intentional tort statutes after the decision in *Mitchell* was issued, but none have affected the heightened pleading requirement." *Bullis v. Sun Healthcare Group*, 2d Dist. Miami No. 2011-CA-21, 2012-Ohio-2112, ¶ 14.

{¶12} R.C. 2745.01, the statute at issue in the instant appeal, provides as follows:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

{¶13} "[A]s used in R.C. 2745.01(C), 'equipment safety guard' means 'a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment.'" *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, ¶ 26, quoting *Fickle v. Conversion Technologies Internatl., Inc.*, 6th Dist. Williams No. WM-10-016, 2011-

Ohio-2960, ¶ 43. "[T]he 'deliberate removal' of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard from the machine." *Hewitt* at ¶ 30. "Although 'removal' may encompass more than physically removing a guard from equipment and making it unavailable, such as bypassing or disabling the guard, an employer's failure to train or instruct an employee on a safety procedure does not constitute the deliberate removal of an equipment safety guard." *Id.* at ¶ 29.

{¶14} In his complaint, Mr. McAllister alleged, inter alia, the following:

The injection molding machine involved in this incident * * * came equipped with various safety guards that protected people who were using the machine.

[] One specific safety guard on this piece of equipment was a sliding safety gate that was "interlocked," which means the injection molding machine would not operate when the sliding gate was opened.

[] There was an interlocked safety guard on the front sliding safety gate of the injection mold[ing] machine. When the front safety gate was open, then the machine should not be operational.

[] There was also an interlocked safety guard on the rear sliding safety gate of the injection mold[ing] machine. When this rear safety gate was open, then the machine should not be operational.

[] On the day Plaintiff Brian McAllister was injured, he opened the front sliding safety gate that had the interlocked safety guard on it in order to change the mold on the injection mold machine.

[] With the front safety gate in this position, the injection mold[ing] machine should not have been operational.

[] While Plaintiff Brian McAllister was working to change the mold, in an effort to help, a co-worker opened the rear sliding safety gate to the machine that also had an interlocked safety guard on it.

[] With the rear safety gate in this position, the injection mold[ing] machine should not have been operational.

[] Despite the fact the sliding safety gates to this machine were in positions that should have made the injection mold[ing] machine inoperable, when the co-worker opened the rear sliding safety gate, an ejector plate in the machine

suddenly moved within the machine, causing Plaintiff Brian McAllister's hand to be crushed.

[] The reason this injury to Plaintiff Brian McAllister happened is because Defendant Myers Industries, by and through its managers, employees, and agents, **prior** to Plaintiff Brian McAllister's injury, **deliberately** took action to change the wiring of the machine in a way that resulted in the **bypassing and removal** of the **interlocked safety guard** on the rear sliding safety gate.

[] Approximately two months before Plaintiff Brian McAllister was injured, Defendant Myers Industries, by and through its managers, employee, and agents, was aware that there was a problem with the injection mold[ing] machine that was involved in this incident.

[] Specifically, Defendant Myers Industries contacted Defendant Bill Hartwick of Defendant Filter Specialties Co. to inspect the injection mold[ing] machine that was involved in this incident.

[] On February 5, 2014, Defendant Bill Hartwick informed management at Defendant Myers Industries there was a part on the injection mold[ing] machine that was worn out and needed to be replaced. * * *

[] The problem with this part was preventing Defendant Myers Industries from running the injection mold machine on a steady basis.

[] Rather than shutting down the injection mold[ing] machine until the replacement part arrived and was installed, Defendant Myers Industries made the conscious decision to instruct and authorize Defendant Bill Hartwick to change the wiring system in [a] way that would keep the injection mold[ing] machine running.

[] Defendant Bill Hartwick informed management at Defendant Myers Industries that the wiring circuit he was installing on the machine at its direction was a "temporary circuit" that should be removed once the new part was installed.

[] The installation of the circuit by Defendant Bill Hartwick, that was done at Defendant Myers Industries['] direction and with its authorization, bypassed and removed the interlock[ed] safety guard on the rear sliding safety gate because now parts inside of the machine could still move, even when the rear sliding safety gate was open.

[] Defendant Myers Industries also had a manual from the manufacture[r] of the injection mold[ing] machine[ ] which specifically warned Defendant Myers Industries that all guards should be in their proper place when the machine was running and interlocks should never be defeated.

[] Despite this information and warning, Defendant Myers Industries made the conscious and deliberate decision to continue to run the injection mold machine that was involved in this incident without an important safety guard it originally came with and to expose its employees, including Plaintiff Brian McAllister, to the dangerous safety condition that decision created.

[] For the reasons set forth above and other facts that will be learned during discovery, Defendant Myers Industries intentionally injured Plaintiff Brian McAllister as defined by and in violation of R.C. [] 2745.01 and Ohio case law.

[] For the reasons set forth above and other facts that will be learned during discovery, Plaintiff Brian McAllister is also entitled to the rebuttable presumption of an "intent to injure" that is afforded to him under [R.C.] 2745.01(C). Specifically, Plaintiff Brian McAllister is entitled to this presumption because Defendant Myers Industries['] decision to add a temporary circuit to the machine so it could keep the machine running until a new part could be installed effectively **removed** the interlocked safety guard on the rear sliding safety gate that came on the machine; protected employees like Brian McAllister; and would have prevented this incident from happening. * * *

[] As a direct and proximate result of the tortious conduct of Defendant Myers Industries described above, Plaintiff Brian McAllister suffered serious permanent injuries, including a partial amputation of his hand; incurred substantial medical expenses; incurred substantial lost wages; experienced a loss of his ability to perform his usual activities, disfigurement, pain and suffering; mental anguish; and suffered other substantial losses and damages, both in the past and into the future.

(Emphasis in original.)

{¶15} We conclude that, when these allegations are viewed as true and all inferences are made in Mr. McAllister's favor, his complaint is sufficient to withstand a motion to dismiss. *Grubb & Assocs. LPA*, 2018-Ohio-3526, at ¶ 8.

{¶16} In its motion to dismiss, Myers Industries, Inc. asserted that Mr. McAllister failed to allege that it intended to harm him, that it removed any specifically identified safety guard, or that it deliberately removed a safety guard.

{¶17} Here, because we conclude that the allegations satisfy R.C. 2745.01(C), we need not address whether the allegations specially assert that Myers Industries, Inc. intended to harm Mr. McAllister.

**{¶18}** Myers Industries, Inc. argued in the trial court and on appeal that Mr. McAllister failed to identify with particularity how the "interlocked safety guard" met the definition of a safety guard in Ohio case law. Notably, the cases that Myers Industries relied upon in the trial court involved summary judgment or a motion for directed verdict, not a motion to dismiss. *See Fickle*, 2011-Ohio-2960, at ¶ 9-14; *Hewitt,* 134 Ohio St.3d 199, 2012-Ohio-5317, ¶ 12. Myers Industries, Inc. has not pointed to a case requiring that, in order to survive a motion to dismiss, a plaintiff must not only identify a safety guard at issue, but also explain the workings of the safety guard so as to demonstrate that it meets the definition of a safety guard in Ohio case law. Essentially, it appears that it is Myers Industries, Inc's belief that Mr. McAllister had to *prove* much of his case at the pleadings stage.

**{¶19}** As noted above, "[a]s used in R.C. 2745.01(C), 'equipment safety guard' means 'a device that is designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment.'" *Hewitt*, 134 Ohio St.3d 199, 2012-Ohio-5317, at ¶ 26, quoting *Fickle* at ¶ 43. Mr. McAllister alleged that the safety guard at issue was the "interlocked safety guard on the rear sliding safety gate[.]" Mr. McAllister also asserted in his complaint that "[t]he installation of the circuit by Defendant Bill Hartwick, that was done at Defendant Myers Industries['] direction and with its authorization, bypassed and removed the interlock[ed] safety guard on the rear sliding safety gate because now parts inside of the machine could still move, even when the rear sliding safety gate was open." From that allegation, one can reasonably infer that the function of the interlocked safety guard on the rear sliding safety gate was to prevent parts inside the machine from moving when the rear sliding safety gate was open. While it is unclear how precisely the interlocked safety guard would do so, we cannot say that it is not possible that in so doing, the interlocked safety guard might "shield the operator from exposure to or injury by a

dangerous aspect of the equipment[.]" *See Hewitt* at ¶ 26. Here, Mr. McAllister did not simply state that a safety guard was removed which caused his injury. Instead, he described the safety guard and its function in such a way that it is possible that the safety guard could be a safety guard as contemplated by Ohio case law.

{¶20} Myers Industries, Inc. additionally argues that Mr. McAllister failed to allege with particularity that it deliberately removed a safety guard. Mr. McAllister alleged in his complaint, inter alia, the following allegations: "The reason this injury to Plaintiff Brian McAllister happened is because Defendant Myers Industries, by and through its managers, employees, and agents, prior to Plaintiff Brian McAllister's injury, deliberately took action to change the wiring of the machine in a way that resulted in the bypassing and removal of the interlocked safety guard on the rear sliding safety gate." (Emphasis omitted.) "The installation of the circuit by Defendant Bill Hartwick, that was done at Defendant Myers Industries['] direction and with its authorization, bypassed and removed the interlock[ed] safety guard on the rear sliding safety gate because now parts inside of the machine could still move, even when the rear sliding safety gate was open." "Defendant Myers Industries also had a manual from the manufacture[r] of the injection mold[ing] machine[ ] which specifically warned Defendant Myers Industries that all guards should be in their proper place when the machine was running and interlocks should never be defeated." "*Despite this information and warning*, Defendant Myers Industries made the conscious and deliberate decision to continue to run the injection mold machine that was involved in this incident without an important safety guard it originally came with and to expose its employees, including Plaintiff Brian McAllister, to the dangerous safety condition that decision created." (Emphasis added.)

**{¶21}** While it is possible the latter, italicized allegation refers to only the information in the prior paragraph of the complaint, i.e. the one pertaining to the manual, it is also possible that Mr. McAllister was alleging that Myers Industries, Inc. had the "information" and thus knowledge that changing the wiring resulted in the interlocked safety guard on the rear sliding safety gate being bypassed and removed. Thus, not only would Myers Industries, Inc. have made the "conscious and deliberate decision" to run the machine without the safety guard, it would have known that changing the wiring removed the safety guard. We conclude that Mr. McAllister's allegations were sufficient to allege that Myers Industries, Inc. deliberately removed a safety guard.

**{¶22}** To the extent that Myers Industries has argued that the machine was not operating when Mr. McAllister was injured and thus the allegations fail to support that a safety guard was needed, it failed to raise that argument in its motion to dismiss. While it did mention that argument in its reply brief in the trial court, reply briefs are not the appropriate place to make new arguments. *See HSBC Bank USA v. Beirne*, 9th Dist. Medina No. 10CA0113-M, 2012-Ohio-1386, ¶ 18. In addition, Meyers Industries, Inc. has not convinced us that such an argument is dispositive with respect to a motion to dismiss given that the allegations must be viewed in a light most favorable to Mr. McAllister. *See Grubb & Assocs. LPA*, 2018-Ohio-3526, at ¶ 8; App.R. 16(A)(7).

**{¶23}** While the parties also discuss whether Mr. McAllister's claims against Myers Industries, Inc. were timely filed, the trial court has not yet considered the merits of this issue. This Court is a reviewing Court, and as such, we would be exceeding the scope of our role if we were to consider this in the first instance. *See Huntington Natl. Bank v. Anderson*, 9th Dist. Lorain No. 17CA011223, 2018-Ohio-3936, ¶ 32.

{¶24} Mr. McAllister's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES BILL HARTWICK AND FILTER SPECIALTIES CO.

{¶25} Mr. McAllister argues in his second assignment of error that the trial court erred in granting summary judgment in favor of Mr. Hartwick and Filter Specialties Co. Specifically, Mr. McAllister argues that the statute of limitations was tolled pursuant to R.C. 2305.15 and that it did not begin to run until Mr. Hartwick's and Filter Specialties Co.'s identities were discovered. However, we sustain Mr. McAllister's assignment of error because Mr. Hartwick and Filter Specialties Co. failed to meet their initial summary judgment burden on the issue of the statute of limitations.

{¶26} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶27} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶28} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of

a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. *Id.* at 293. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶29} In order to substantiate their assertion that Mr. McAllister's claim was filed outside the statute of limitations, Mr. Hartwick and Filter Specialties Co. pointed to the prior case involving the parties. However, Mr. Hartwick and Filter Specialties Co. did not submit any evidence from the prior proceedings in support of their arguments. Thus, none of the documents from the prior proceedings are in our record.

{¶30} Nonetheless, in concluding that Mr. McAllister's claim was filed outside the statute of limitations, it appears that the trial court took judicial notice of the proceedings in the prior case. This was improper. "It is well established '[t]rial courts will not take judicial notice of their own proceedings in other cases, even though between the same parties and even though the same judge presided. A trial court may only take judicial notice of prior proceedings in the immediate case.'" *State v. Vaughn*, 9th Dist. Summit No. 27902, 2016-Ohio-7384, ¶ 25, quoting *In re J.C.*, 186 Ohio App.3d 243, 2010-Ohio-637, ¶ 14 (9th Dist.).

{¶31} Accordingly, the trial court erred in relying on evidence outside the record in determining summary judgment was appropriate. Further, because Mr. Hartwick and Filter

Specialties Co. failed to present evidence to establish their entitlement to summary judgment on the basis of the statute of limitations, the trial erred in granting summary judgment on that basis.

{¶32}  Mr. McAllister's second assignment of error is sustained.

### III.

{¶33}  Mr. McAllister's assignments of error are sustained.  The judgment of the Summit County Court of Common Pleas is reversed and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

R. CRAIG MCLAUGHLIN, Attorney at Law, for Appellant.

ALI RAZZAGHI, Attorney at Law, for Appellees.

JOSEPH N. GROSS, Attorney at Law, for Appellee.

EDWARD SAADI, Attorney at law, for Appellee.