[Cite as *Cruz v. Western*, 2020-Ohio-5086.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

CARMEN CRUZ,                                    :

    Plaintiff-Appellant,              :

                                           No. 109140

    v.                                               :

WESTERN/SCOTT FETZER                  :
COMPANY, ET AL.,

    Defendants-Appellees.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 29, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-906032

---

### *Appearances:*

Plevin & Gallucci Co., L.P.A., David R. Grant, Frank L. Gallucci, III, and Michael Shroge; Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis E. Grube, *for appellant.*

Benesch, Friedlander, Coplan & Aronoff, L.L.P., Eric Larson Zalud, and Justin L. Monday, *for appellees.*

RAYMOND C. HEADEN, J.:

{¶ 1} Plaintiff-appellant Carmen Cruz ("Cruz") appeals from the trial court's granting of summary judgment in favor of defendants-appellees

Western/Scott Fetzer Company ("Western") and denial of Cruz's motion for partial summary judgment. For the reasons that follow, we affirm.

**Procedural and Substantive History**

{¶ 2} Since 1990, Cruz has worked for Western as a machine operator. On November 14, 2013, Cruz was working at Western's plant located in Avon Lake, Ohio. This facility produces various parts related to the control, storage, and transmission of high-pressured gases. One of Cruz's job duties that day was to operate a drill tap machine known as machine number 305. Cruz was required to reach around a Plexiglass shield, known as a profile gate, to spray lubricant from a plastic bottle onto the machine's rotating tap. While doing so, the machine pulled Cruz's right hand into the press, and the tap drilled into her wrist, resulting in significant hand injuries. At the time of Cruz's injury, she was wearing white cotton gloves over blue latex gloves, and the record reflects that coworkers had told her not to wear gloves because it posed a danger.

{¶ 3} On October 26, 2018, Cruz filed a complaint in the Cuyahoga County Court of Common Pleas, initiating a workplace intentional tort action pursuant to R.C. 2745.01 et seq., seeking damages for personal injury. Cruz alleged that the manual lubrication process utilized on machine 305 constituted the deliberate removal of an equipment safety guard. On November 29, 2018, Western filed an answer denying liability.

{¶ 4} On July 16, 2019, Cruz filed a motion for partial summary judgment in which she argued that, based upon undisputed record evidence, she was entitled

to the benefits of the equipment safety guard presumption codified in R.C. 2745.01(C).  On July 26, 2019, Western filed a motion for summary judgment, arguing that the apparatus in question is not an equipment safety guard and that it was not deliberately removed.

{¶ 5}  On October 16, 2019, the trial court granted Western's motion for summary judgment and denied Cruz's motion for partial summary judgment.  Cruz appeals, presenting one assignment of error for our review.

**Legal Analysis**

{¶ 6}  In Cruz's sole assignment of error, she argues that the trial court erred as a matter of law by denying her motion for partial summary judgment and granting Western's motion for summary judgment.

{¶ 7}  We review the trial court's summary judgment de novo, applying the same standard that the trial court applies under Civ.R. 56(C).  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Under Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party.  Civ.R. 56(C).

{¶ 8}  R.C. 2745.01, Ohio's statute regarding employer liability for intentional torts, provides, in relevant part:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

{¶ 9} The statute goes on to codify the equipment safety guard presumption as follows:

(C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

The two questions we must address are whether the Plexiglass shields on machine 305 are equipment safety guards for purposes of R.C. 2745.01(C) and if so, whether there was a "deliberate removal" of the equipment safety guard so as to trigger the statutory presumption of intent to injure in the same subsection.

{¶ 10} As an initial matter, we note that absent a deliberate intent to injure, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system. *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, 983 N.E.2d 1253, ¶ 25. Therefore, the threshold for an employee to successfully bring an intentional tort claim against their employer under

R.C 2745.01 is steep. *Stallman v. Midwest Bldgs. & Supply Co.*, 4th Dist. Highland No. 18CA16, 2019-Ohio-3582, ¶ 20.

{¶ 11} In this case, the trial court stated in its October 16, 2019 judgment entry that there was no genuine issue of material fact because although the left profile gate on machine 305 was an equipment safety guard, the right profile gate on machine 305 was not an equipment safety guard. The court also stated that Western added the right profile gate to the machine for additional worker safety to avoid being struck by shards of material during the machine's operation, and there was no evidence that the right profile gate was provided by the machine's manufacturer. Moreover, the court stated that the manual lubrication of machine 305 by Cruz does not constitute a "deliberate removal" of an equipment safety guard by Western.

{¶ 12} In the context of R.C. 2745.01(C), the Ohio Supreme Court has defined an "equipment safety guard" as "a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment." *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, ¶ 2.

{¶ 13} In determining whether something fits this definition, one factor courts have considered is the purpose for which the device was designed. Even in cases where a device may actually operate to block an operator's access to a dangerous aspect of equipment, the device may not be deemed an equipment safety guard. *Zuniga v. Norplas Industries*, 2012-Ohio-3414, 974 N.E.2d 1252, ¶ 8 (6th Dist.). In *Zuniga*, the court held that even though a ventilation system operated to

block access to a point of machinery on which the plaintiff was injured, the ventilation system was not an equipment safety guard where the plaintiff had not presented any evidence that it was designed to be anything other than a dust-collection device.

{¶ 14} Similarly, the Fourth District has found that although a forklift backup alarm might have alerted the employee to danger from equipment, it would not have served to actually keep him away from the zone of danger. *Turner v. Dimex, L.L.C.*, 2019-Ohio-4251, 147 N.E.3d 35, ¶ 36 (4th Dist.). It is worth noting that the device in question in the instant case, even as it was properly installed and serving its intended purpose, would not and did not serve to actually keep a machine operator away from the drill tap. This is not the result of some defect or malfunction in profile gate; it is an indication that the profile gate was never meant to serve such a purpose.

{¶ 15} Here, the evidence reflects that the function of the right profile gate was to keep errant chips from flying into the machine operator. Cruz emphasizes that Western employees routinely referred to the profile gates as "shields" or "safety guards." She also sets forth an extensive argument explaining how the profile gates were installed to comport with the standards and regulations laid out in the Occupational Safety and Health Administration Act ("OSHA"). As discussed above, the mere fact that a device might serve some general safety purpose is insufficient to conclude that the device is an equipment safety guard for purposes of R.C. 2745.01.

The fact that the right profile gate served a safety purpose is not on its own dispositive.

{¶ 16} Likewise, while Cruz appears to implicitly argue that the facts here amount to an OSHA violation, nothing pertaining to any such violation appears in the record. Even if it did, OSHA violations should not be used to analyze employer liability under R.C. 2745.01. *Schiemann v. Foti Contracting, L.L.C.*, 8th Dist. Cuyahoga No. 98662, 2013-Ohio-269, ¶ 24, citing *Hernandez v. Martin Chevrolet, Inc.*, 72 Ohio St.3d 302, 303, 649 N.E.2d 1215 (1995).

{¶ 17} Further, the right profile gate was clearly not designed to serve the purpose of protecting an operator from the tap where it was not attached to the machine by the manufacturer and part of the operator's job duties involved reaching around that device to access the tap.

{¶ 18} Moreover, even if either or both profile gates constituted an equipment safety guard for purposes of R.C. 2745.01, summary judgment was still appropriate here because Cruz did not present evidence creating a genuine issue of material fact as to whether Western engaged in a "deliberate removal" for purposes of the statute.

{¶ 19} In interpreting R.C. 2745.01, the Ohio Supreme Court has held that a "deliberate removal" is not strictly limited to a physical removal of an equipment safety guard. A deliberate removal "occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard from the machine." *Hewitt*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, at ¶ 30.

Further, a "removal" for purposes of the statute "may encompass more than physically removing a guard from equipment and making it unavailable, such as bypassing or disabling the guard." *Id.* at ¶ 29. Therefore, Western's assertion that a bypass cannot constitute a deliberate removal is not persuasive.

{¶ 20} Although a bypassing of an equipment safety guard may constitute a deliberate removal, however, Cruz's argument that the requirement that she reach her hand around the right profile gate does not constitute the sort of bypass contemplated by the Ohio Supreme Court in *Hewitt.* As discussed above, there was no act taken by the employer to impact the operation of the right profile gate or somehow render it inoperable.

{¶ 21} The cases in which Ohio courts have found that a bypass constituted a deliberate removal all involved some alteration of the safety guard, such as rewiring a machine so as to permit parts to continue moving even when a safety guard was open. *McAllister v. Myers Industries*, 9th Dist. Summit No. 29040, 2019-Ohio-773, ¶ 20. No such action was taken in this case. The evidence reflects that at the time of the accident in this case, the right profile gate was operating to keep debris from hitting the operator.

{¶ 22} We are not persuaded by Cruz's argument that the policy Western had in place requiring her to manually lubricate the machine is the kind of "considered decision" to bypass a safety guard that constitutes a deliberate removal for purposes of R.C. 2745.01(C). *McKinney v. CSP of Ohio, L.L.C.*, 6th Dist. Wood No. W-10-070, 2011-Ohio-3116, ¶ 17.

**{¶ 23}** Because there was no genuine issue of material fact, and Western was entitled to judgment as a matter of law, the trial court did not err in granting Western's motion for summary judgment. Cruz's sole assignment of error is overruled.

**{¶ 24}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

RAYMOND C. HEADEN, JUDGE

EILEEN T. GALLAGHER, A.J., and
EILEEN A. GALLAGHER, J., CONCUR